Drake, Ch. J.,
delivered the following opinion:
This case was very ably argued on behalf of the claimant as if it were pending before an international tribunal, organized for its decision on the principles and by the rules of public law. \V ere this court vested with jurisdiction so to decide it, it would be difficult to resist, the force of the arguments presented by the claimant’s counsel. But, in any view I can take of the matter, the court is not authorized to base its decision for or against either party on those principles and rules. We have no jurisdiction except that conferred by statutes of the United States, and public law cannot be held to enlarge the powers so conferred, and much less can it operate to take them away, modify, or limit them.
*671 This action was brought under the Abandoned or captured property Act of March 12, 1863, and by the terms of that act the claimant’s right of recovery must be decided. Aside from that act the claimant would have no possible right to sue in this court, though he could demonstrate that every principle of public law justified his right to seek through his own government the payment to him by the United States of the value of the cotton seized and taken by their military authorities.
The Abandon ed or captured property Act declared that “any person claiming to have been the owner of any such abandoned or captured property may at any time within two years after the suppression of the rebellion prefer his claim to the proceeds thereof in the Court of Claims; anil on proof to the satisfaction of said court of his ownership of said property, of his right to the proceeds thereof, and that he has never given • any' aid or comfort to the present rebellion, to receive the residue of said proceeds, after the deduction of any purchase-money which may have been paid, together with the expenses of transportation and sale of said property, and any other lawful expenses attending the disposition thereof.”
Within those few lines the claimant must find his right to recover in this case, or not find it at all. If he finds it there he has no need to invoke aid from international law; if he cannot find it there that law cannot aid him.
The petition seeks redress under that act, and is framed to meet the requirements of the twelfth section of the Act March 3,1863, (12 Stat. L.,765,) which imposes the foliowinglimitation:
“Provided, however, That in order to authorize the said court to render a judgment in favor of any claimant, if a citizen of the United States, it shall be set forth in the petition that the claimant, and the original and every prior owner thereof where the claim has been assigned, has at all times borne true allegiance to the Government of the United States, and, whether a citizen or not, that he has not in any way voluntarily aided, abetted, or given encouragement to rebellion against the said Government, which allegations may be traversed by the Government; and if on the ti ini such issue shall be decided against the claimant, his petition shall be dismissed.”
That prescribes a condition-precedent to the exercise by this court of its power to render a judgment in favor of any claimant. This court always, after the enactment of that proviso, *672 enforced its requirement, until the Supreme Court, by its repeated decisions, compelled us to abandon it in every case where the claimant was either a citizen of the United States, or an alien resident within the United States. That court decided that either a special pardon, or the general amnesty of December 25, 1868, obliterated the offense of treason involved in giving aid and comfort to the rebellion, so far as persons of either of those descriptions were concerned; and that the. fact.oí their having given such aid and comfort was, after the pardon or amnesty, no longer an obstacle to their obtaining a judgment in this court. But to this day the question has never been submitted to that court whether an alien residing in a foreign-country, who gave aid and comfort to the rebellion, may prosecute a suit here for the proceeds of his property captured in the rebel States during the war.
The petition avers that Alexander Collie had not in any way • voluntarily aided, abetted, or given encouragement to rebellion against the Government of the United States; and the Government took issue upon the averment. The facts found show that he did voluntarily give very great and efficient aid to the rebellion, by running through the blockade into the ports of the rebel States large quantities of munitions of war, and running out from those ports to England large quantities of cotton, which, sold in England, furnished the rebel authorities large credits there; and also by sending presents from himself of cannon and ammunition to the rebel authorities; and also by a gift of $30,000 from, himself to those authorities to aid the needy and the suffering in those States, particularly those who had been made so through the war.
And now the question arising on these facts is not whether, under the principles of international law, he had a just claim against the United States for the value of his cotton captured in Savannah, but whether under the Act March 12, 1863, he is authorized to prefer his claim in this court for the proceeds of that cotton and obtain a judgment therefor.
It will be instantly observed that, by the principles of international law, he would be entitled to insist upon restitution of the full value of his cotton; while in this court he can recover only the net proceeds of the sale thereof, after deducting all expenses. If, therefore, he should recover here those proceeds, he might, through his government, still demand the difference *673 between the proceeds and the value of the cotton, with interest on that value from the date of capture till that of the payment to him, under the judgment of this court, of the proceeds, and interest on the balance until paid. If, however, we deny his right to prefer his claim here, we do not thereby pass upon the merits of his claim, much less would that action operate a forfeiture or confiscation of his property, but it would simply withhold from him one of two modes of redress, leaving the other fully open to him. Most assuredly this Government is not bound by international law to furnish him a judicial remedy; and when it does provide, by statute, a court where claims for captured property can be preferred, neither he nor any other person can come into that court for that purpose on any other terms than thoes the statute prescribes.
The real question in the case, then, is, whether Alexander Collie, a non-resident alien, who voluntarily gave aid and comfort to the rebellion, is entitled to prefer his claim here for the proceeds of his cotton. Beyond doubt, the terms of the act exclude hi m, justas they did all men who had given aid and comfort to the rebellion, until the Supreme Court held that pardon or amnesty obliterated the act of treason as well as its guilt, and so the act could never be set up as a bar to recovery.
Beyond controversy, neither pardon nor amnesty applies to him who has not been guilty of a criminal offense against the sovereign or state.
Equally beyond controversy, Alexander Collie’s sending munitions of war from the country of his domicile to the rebel States was not an act which subjected him to punishment under the laws of the United States. The worst that could befall him was the capture in transitu of those munitions.
Hence it follows, as a clear, inevitable conclusion, that he was not the subject of amnesty, and therefore can claim nothing through it.
As the decisions of the' Supreme Court which dispensed with averment and proof of loyalty to the United States did not deny the constitutional right of Congress to require such averment and proof, but merely affirmed that the effect of pardon and amnesty was to do away with the necessity of them, and as Collie was not the subject of amnesty, it follows that there is nothing which does or could relieve him from the obligation to aver and prove, not his allegiance to the Government of the *674 United States, which he never owed, but that he “ had not in any way voluntarily aided, abetted, or given encouragement to rebellion against the said Government.” He so averred, but failed to sustain the averment by proof. On the contrary, the evidence most completely disproved the averment. Such being the case, no matter how valid and just a claim he may have, in the view of public law, he has no right to invoke the jurisdiction of this court, which can be exercised only in conformity with the statutes conferring its powers.
The claimant’s petition, therefore, should be dismissed.